UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALISTER D. HARPER,

                              Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-3803(NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Alister D. Harper ("Harper") brings this action under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the Social Security Administration's ("SSA's") denial of his claim for disability insurance benefits ("DIB"). (Compl. (Docket Entry # 1).) The Commissioner moves and Harper cross-moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Pl.'s Mot. (Docket Entry # 18); Def.'s Mot. (Docket Entry # 22).) As set forth below, the court grants the Commissioner's motion and denies Harper's motion.

## I. STANDARD OF REVIEW

### A. Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem.

1

Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to considering the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Administrative Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id.

## II. BACKGROUND

Harper was born on October 12, 1964. (Administrative Transcript ("Tr.") (Docket Entry ## 8-9, 17) at 23.) On April 28, 1990, Harper filed a claim for DIB, alleging a disability onset date of October 25, 1989. (Id. at 23-25.) On August 15, 1990, the Commissioner granted his claim for DIB. (Id. at 86.) Since then, the Commissioner has conducted several reevaluations of

Harper's condition. (Id. at 43-49.) On April 1, 2003, the Commissioner determined that Harper was no longer suffering from a disability, as determined by the Social Security regulations. (Id. at 78.) Harper requested reconsideration of this decision on July 7, 2003. (Id. at 83-94.) The Commissioner denied his request for reconsideration. (Id. at 95-103.) Harper then requested review before an Administrative Law Judge ("ALJ"). (Id. at 128-29.) On July 5, 2007, ALJ Jay L. Cohen held a hearing regarding Harper's claim. (Id. at 407-26.) On December 14, 2007, the ALJ found that the Commissioner correctly determined that Harper was not disabled beginning April 1, 2003. (Id. at 13-22.) Harper then sought review before the SSA Appeals Council, which denied his request on May 9, 2008. (Id. at 532-34.) On July 9, 2008, Harper then sought an extension of time to respond to the ALJ's denial of his claim, and submitted additional evidence to support his claim. (Id. at 530.) On August 7, 2008, the Appeals Council rejected the additional evidence submitted by Harper, but granted him an extension of time to file a civil action challenging the Commissioner's denial. (Id. at 7-8.) By operation of 42 U.S.C. § 405(g), the Appeals Council's August 7, 2008, decision became the final judgment of the Commissioner. Harper timely filed his Complaint on September 9, 2008. See 42 U.S.C. § 405(g).

## III. DISCUSSION

### A. Standard of Review for Determining Disability

To determine whether a claimant is entitled to DIB, an ALJ utilizes a five-step analysis, as set forth in 20 C.F.R. § 404.1520(a)(4). The Second Circuit, in Dixon v. Shalala, described this five-step analysis:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.

3

If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.

If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995).

### B. The ALJ's Decision

Under step one of the analysis, the ALJ found that Harper did not engage in substantial gainful activity since the end of his disability termination date on April 1, 2003. (Tr. at 15.) Under step two, the ALJ found that although Harper's schizophrenia was disabling until April 2003, the symptoms of his condition were not disabling as of 2007.[1] (Id. at 18.) The ALJ also found that Harper suffered from the human immunodeficiency virus ("HIV"). (Id.) Under step three, the ALJ found that Harper's HIV did not meet or exceed the Listing of Impairments. (Id.) Under step four, the ALJ found that Harper possessed sufficient residual functional capacity to "perform a range of light work." (Id. at 18-22.)

---

[1] Although schizophrenia can be treated, it cannot currently be cured. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders § 295.30 (4th ed. 2000). The court openly questions the Commissioner's conclusion that Harper's schizophrenia, which was disabling for years, suddenly ceased to be disabling. Unfortunately, Harper's counsel does not take issue with this aspect of the Commissioner's decision, so the court does not address this point further.

4

Plaintiff's counsel, Herbert S. Forsmith, submits a rambling, scattershot motion contesting almost every one of the ALJ's findings and various procedures employed by the ALJ in developing the administrative record. Sadly, this is not the first time Mr. Forsmith has filed similarly incoherent moving papers. (See Plaintiff's Motion, Peck v. Astrue, No. 1:07-cv-03762 (NGG) (E.D.N.Y. Nov. 17, 2008)). The court will address Plaintiff's arguments sequentially as best as it can decipher them.

1. Harper's Right to Legal Counsel

Harper's counsel appears to argue that the ALJ committed legal error by improperly allowing Harper to waive his right to counsel at his July 5, 2007, administrative hearing. (Pl.'s Mot. at 3-5.) At an administrative hearing, the Commissioner need only to "notify the claimant in writing of (1) her options for obtaining an attorney to represent her at her hearing, and (2) the availability of organizations which provide legal services free of charge to qualifying claimants." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (internal punctuation omitted). The administrative record reflects that the Commissioner properly notified Harper, and that Harper testified that he received these notifications at his hearing. (Id. at 273-78, 305.) The Commissioner did not need to do anything more to effect a valid attorney waiver from Harper. See Lamay, 562 F.3d at 507. The Commissioner, therefore, properly informed Harper of his right to legal counsel, and Harper validly waived that right.

2. The Continuing Disability Review Determination Date

To determine whether a claimant's medical conditions have improved such that they are no longer disabling, the ALJ must "compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled to the medical severity of that impairment(s) at that time." 20 C.F.R. § 404.1594(b)(7). In other words, in assessing medical improvement, an ALJ

5

must use two time points: (1) the time when the disability occurred, and (2) the time of the most favorable medical decision after the Commissioner's continuing disability review. By way of example: if the claimant's disability occurred in 2000, the Commissioner's continuing disability review occurred in 2001, and the claimant had three medical decisions from 2002, 2003, and 2004, the ALJ should use the 2000 disability determination as the first time point, and the year of the most favorable medical decision from either 2002, 2003, or 2004 as the second time point. Cf. Potts v. Comm'r of Soc. Sec., 357 F. App'x 49, 50 (9th Cir. 2009) (concluding that the use of a pre-continuing disability review medical opinion for the second time point was in error).

In his decision, the ALJ used Harper's initial disability onset date of 1989 as the first time point, and a 2003 medical decision as the second time point. (Tr. at 18.) Harper's counsel contests the ALJ's use of the 1989 date as the first comparison point. (Pl.'s Mot. at 8-9.) Harper's counsel does not contest the use of the 2003 medical opinion as the second time point. Because Harper's original DIB claim alleged a disability onset date of 1989, this was proper under 20 C.F.R. § 404.1594(b)(7). The Commissioner, therefore, did not commit legal error when he assessed Harper's improvement by comparing his 2003 medical opinions to his 1989 medical opinions.

### 3. Medical Examiners' Statements of Qualification

The ALJ relied on the opinions of several medical examiners in his decision. (See Tr. at 16-17.) Harper's counsel complains that the ALJ did not include, in the administrative record, a statement of the examiners' professional qualifications, and that this constitutes legal error. (Pl.'s Mot. at 10.) Harper's counsel cites to the Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-1-30, which requires "the ALJ [to] admit into the record a statement of the health care professional's qualifications . . . unless the qualifications are [otherwise] adequately

documented . . . [such as] stationery letterhead or other document[s that] identifies his or her medical degree, specialty and Board certification."

This is now – at least – the third time that Plaintiff's counsel has made similar arguments regarding the HALLEX. See, e.g., Peck v. Astrue, No. 1:07-CV-3762 (NGG), 2010 WL 3125950, at *9-10 (E.D.N.Y. Aug. 6, 2010); Diaz v. Astrue, No. 08-CV-5006 (JG), 2009 WL 2601316, at *4 n.7 (E.D.N.Y. Aug. 24, 2009). As both previous decisions clearly note, the HALLEX is simply a set of internal guidelines for the SSA, not regulations promulgated by the Commissioner. A failure to follow procedures outlined in HALLEX, therefore, does not constitute legal error. Martinez v. Astrue, No. 3:07-cv-699 (SRU), 2009 WL 840661, at *2 n.1 (D. Conn. Mar. 30, 2009) (quoting Schweiker v. Hansen, 450 U.S. 785, 789 (1981)); see also Bordes v. Comm'r of Soc. Sec., 235 F. App'x. 853, 859 (3d Cir. 2007); Lowry v. Barnhart, 329 F.3d 1019, 1023 (9th Cir. 2003). Consequently, the ALJ did not commit legal error. Plaintiff's counsel should now be on notice that future, frivolous appeals to the HALLEX will not be considered.

4. Evidence Provided to the Medical Examiners

Harper's counsel further argues that the medical examiners were not provided with Harper's disability status prior to their consultations or afterwards. The Commissioner's regulations concerning the elements required for a complete consultative examination simply do not require this information. 20 C.F.R. § 404.1519n(c). Further, the cases cited by Harper predate the enactment of these regulations. Compare Gavin v. Heckler, 811 F.2d 1195 (8th Cir. 1987); Fernandez-Sosa v. Bowen, 701 F. Supp. 74 (S.D.N.Y. 1988); Torres v. Bowen, 700 F. Supp. 1306 (S.D.N.Y 1988) with 20 C.F.R. § 404.1519n(c) (1991). Therefore, the Commissioner was not required to provide this information to any medical examiners, and did not commit legal error by failing to do so.

## 5. Clarity of Medical Examiners' Reports

Harper's counsel further argues that "[t]he consultative reports included assessments so vague and unclear as to render them useless." (Pl.'s Mot. at 11.) A medical examiner's report is functionally useless where it "does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference" regarding disability. See Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000). This occurs where the report, rather than evaluating medical evidence, merely lists conclusions unmoored from the examiner's factual findings, such as stating, without more, that the claimant has "mild" or "moderate" impairments. See id. Plaintiff's counsel does not point to any specific deficiencies in any of the medical examiners' reports, nor, after a searching review of the administrative record, can the court find any. Harper's counsel's argument here fails.

## 6. Harper's Subjective Complaints

Harper's counsel further appears to argue that the ALJ failed to properly take into account Harper's subjective complaints of his impairment. (Pl.'s Mot. at 12.) To assess a claimant's allegations concerning the severity of her disabilities under step four, an ALJ must engage in a two-step analysis. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). And second, "[i]f the claimant does suffer from such an impairment . . . the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." Id. (internal quotation marks omitted) (citing 20 C.F.R. § 404.1529(a)). If an ALJ finds that the claimant's testimony is not consistent with the record, the ALJ must weigh the credibility of the claimant's testimony in light of:

(1) the claimant's daily activities;

(2) the location, duration, frequency, and intensity of the pain;

(3) precipitating and aggravating factors;

(4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;

(5) any treatment, other than medication, that the claimant has received;

(6) any other measures that the claimant employs to relieve the pain; and

(7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)).

In Harper's case, the ALJ found that Harper's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 20.) In rendering this finding, the ALJ properly engaged in the analysis prescribed by 20 C.F.R. § 404.1529(c)(3): He weighed Harper's daily activities, such as self-care and maintaining his home (Tr. at 20); noted precipitating and aggravating factors of Harper's HIV, such as his failure to take his antiretroviral medication (id.); described other treatment Harper received, including a brief hospitalization for an unrelated incident in December 2005 (id.); and discussed Harper's prior schizophrenia (id. at 20-21). At his hearing, Harper did not suggest that his HIV caused him any pain or that he was prescribed or taking medications other than antiretrovirals for his HIV. The ALJ, therefore, did not commit legal error in discounting Harper's subjective complaints.

### 7. Development of the Record

Harper's counsel further argues that the ALJ failed to adequately develop the record because he did not inquire as to why Harper had discontinued his psychiatric treatment or probe Harper's "vocational failures." (Pl.'s Mot. at 14.) Where a claimant proceeds *pro se* at an administrative hearing, "the ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980) (internal quotation marks omitted). The ALJ properly did so here. First, the record demonstrates that the ALJ inquired as to why Harper had periodic difficulty maintaining work. On questioning from the ALJ, Harper testified that he previously had difficulty working due to depressive episodes. (Tr. at 508-13.) Second, while the ALJ did not ask Harper *why* he discontinued psychiatric treatment in 2007, the ALJ more than fully developed the record with psychiatric and medical treatment notes ranging from the disability termination date, in April 2003, until his administrative hearing in 2007. Indeed, with the assistance of Harper, the ALJ obtained a wealth of medical opinions concerning Harper's claim during the disability period, and engaged in a lengthy dissertation about these opinions. (See Tr. at 15-18.) The ALJ, therefore, adequately developed the administrative record.

### 8. Opinion of Dr. Dwenger

Lastly, Harper's counsel argues that the ALJ did not properly consider the opinion of Dr. Randall R. Dwenger. The Commissioner's regulations require the SSA to "evaluate every medical opinion we receive" and give controlling weight to the medical opinions of treating sources. See 20 C.F.R. § 404.1527(d)(2). A treating physician is defined as a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No.

04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (quoting Schisler v. Sullivan, 3 F.3d 563, 569 (2d Cir. 1993)) (internal quotation marks omitted).

The treating physician rule requires an ALJ to give a claimant's treating physician's opinion "controlling weight" if the treating physician's "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). "[A]n ALJ may not reject a treating physician's disability opinion based 'solely' on internal conflicts in that physician's clinical findings." Carvey v. Astrue, No. 09-cv-4438, 2010 WL 2264932, at *2 (2d Cir. June 7, 2010) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)). But, where other medical opinions in the record contradict the treating physician's opinion, an ALJ need not give the treating physician's opinion controlling weight. (Id.)

If an ALJ does not give controlling weight to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the assessment. 20 C.F.R. § 404.1527(d)(2). An ALJ must assess the length, nature, and extent of the treatment relationship; the "supportability" of the medical opinion; the consistency of the opinion with other evidence in the record; the treating physician's specialization, if any; and any other factors the claimant may bring to an ALJ's attention. 20 C.F.R. § 404.1527(d)(2)-(d)(6). While an ALJ need not recite each one of these factors by rote, it must be clear from her decision that "the ALJ applied the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). In any event, an ALJ must provide "good reasons" for the lack of weight given to the treating physician's opinion. Kennedy v. Astrue, 343 F. App'x 719, 722 (2d Cir. 2009). "A reasonable basis for doubt that the ALJ applied the correct legal standard in determining the

weight to afford the treating physician can be grounds for remand." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

Here, the ALJ wholly discounted the opinion of Dr. Dwenger as "not pertinent." (Tr. at 21.) In doing so, the ALJ focused on the short treatment relationship between Dr. Dwenger and Harper of less than one year, and noted that Dr. Dwenger's opinion reported on incidents that predated his care for Harper. (Tr. at 20.) It was not clear from Dr. Dwenger's opinion whether he practiced in a specialty discipline, but the ALJ noted that Dr. Dwenger's opinion was "not consistent with psychiatric disability" and other evidence in the record. (Id.) The ALJ further cited a contemporaneous medical report that stated that Harper was capable of working. (Id.) These were "good reasons" for discounting Dr. Dwenger's opinion under 20 C.F.R. § 404.1527(d)(2), and the ALJ applied the substance of that regulation faithfully. The ALJ, therefore, did not commit legal error.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Judgment on the Pleadings is GRANTED and Plaintiff's cross-motion is DENIED. The Clerk of Court is directed to close this case.

SO ORDERED.                                                s/Nicholas G. Garaufis

Dated: Brooklyn, New York                                  NICHOLAS G. GARAUFIS
       December 23, 2010                                   United States District Judge